Filed 7/6/21  In re R.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>L.M.,<br><br>                Appellant. | E076120<br><br>(Super.Ct.Nos. J275424, J275425 & J275426)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Appellant.

Michelle D. Blakemore, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

L.F. (Mother) is the maternal aunt and adoptive mother to five children: S.M., L.M.,[1] H.R., R.R., and R.E.[2] The three youngest children, H.R., R.R., and R.E., were adopted in July 2017. In March 2018, San Bernardino County Children and Family Services (CFS) filed petitions on behalf of all five children pursuant to Welfare and Institutions Code[3] section 300 et seq., following allegations that Mother's husband had sexually abused L.M. and H.R.

During the course of the dependency proceedings, S.M. and L.M. both reached the age of majority,[4] and the remaining children were placed with paternal relatives willing to adopt in October 2019. Following the termination of reunification services and visitation with Mother, the juvenile court set the matter for a hearing pursuant to section 366.26 to consider selection of a permanent plan of adoption for H.R., R.R., and R.E. In response, L.M. filed a petition pursuant to section 388 requesting that his sibling relationship be recognized and be considered as a basis for selecting a permanent plan other than adoption for H.R., R.R., and R.E.

---

[1] L.M.'s birth name is E.M., but he now identifies as transgender and prefers to be called by his chosen name, L.M.

[2] At some point in the proceedings, the juvenile court and parties began using the name Ri.R. to refer to R.E. However, for clarity and continuity, we will use R.E. to refer to this child throughout the opinion.

[3] Undesignated statutory references are to the Welfare and Institutions Code.

[4] S.M. was born in 2001, and L.M. was born in 2002.

Following a contested hearing on November 5, 2020, the juvenile court denied L.M.'s request and terminated Mother's parental rights. L.M. appeals from this order, arguing the juvenile court erred in failing to apply the sibling relationship exception to the termination of parental rights provided in section 366.26, subdivision (c)(1)(B)(v). We find no error, and we affirm the order.

## II. FACTS AND PROCEDURAL HISTORY

A. *Facts*

Mother is the maternal aunt and adoptive mother to five children: S.M., L.M., H.R., R.R., and R.E.[5] In March 2018, H.R. and L.M. reported they had been sexually abused by Mother's husband. The children were detained, and CFS filed petitions on behalf of all the children pursuant to section 300, subdivisions (b), (d), and (j), as a result of the alleged sexual abuse.

On May 17, 2018, a jurisdictional hearing was held; Mother pled no contest to the allegations of the section 300 petitions, and the juvenile court sustained the allegations of the petitions.

On July 19, 2018, a dispositional hearing was held; and the juvenile court formally ordered the children removed from Mother's custody, granted Mother reunification services, and approved weekly supervised visitation between Mother and the children.

---

[5] Mother adopted S.M. and L.M. in 2005 and adopted H.R., R.R., and R.E. in 2017.

On June 18, 2019, a 12-month review hearing was held, and the juvenile court terminated reunification services to Mother. Following a special hearing on August 7, the juvenile court authorized CFS to suspend visitation among Mother and the children.

On October 11, 2019, the three youngest children, H.R., R.R., and R.E., were placed with paternal relatives, Mr. M. and Ms. S. L.M. was placed separately with a maternal relative.

On May 26, 2020, CFS recommended a hearing pursuant to section 366.26 be set to select and implement a permanent plan of adoption for H.R., R.R., and R.E. It was reported that H.R., R.R., and R.E. had adjusted well to living in the home of Mr. M. and Ms. S.; they wished to be adopted by Mr. M. and Ms. S.; and they no longer desired to have contact with L.M. or their maternal relatives in order to avoid drama. As a result, the juvenile court set the matter for a hearing to consider the selection and implementation of a permanent plan of adoption pursuant to section 366.26.

B. *Section 366.26 Report*

On September 18, 2020, CFS submitted a report in advance of the section 366.26 hearing. CFS recommended parental rights be terminated and a permanent plan of adoption implemented for H.R., R.R., and R.E. CFS reported that all three children were healthy, meeting their developmental milestones, and doing well in school. H.R.'s and R.R.'s emotional well-being had improved to the point that they had graduated from services and were no longer in need of therapy.

CFS reported that the children had adjusted to their placement in the home of paternal relatives, Mr. M. and Ms. S.; the paternal relatives were willing to adopt the

4

children; and there was a clear attachment between the children and the paternal relatives. CFS reported that Mr. M. and Ms. S. had known the children their entire lives and had been involved with helping to provide for the children, even prior to the placement in their home.

CFS evaluated the prospective home of Mr. M. and Ms. S. favorably. They lived in a three-bedroom home that appeared to comfortably accommodate the children. Both Mr. M. and Ms. S. had stable employment, reported no counseling or psychological issues, and had no criminal or "CMS history." However, Mr. M. and Ms. S. did report that they were not currently comfortable with continued contact with the children's biological mother, but they indicated they would be open to contact in the future if such contact became appropriate.

Following the submission of this report, the matter was set for a contested evidentiary hearing upon Mother's request.

C. *L.M.'s Section 388 Petition*

Prior to the date set for the contested section 366.26 hearing, L.M. filed a petition pursuant to section 388. L.M. requested the court recognize his sibling relationship with H.R., R.R., and R.E. and objected to selection of a permanent plan of adoption for the children. L.M. argued he was raised in various homes with the children, shared significant and common experiences with them, and assumed the role of a caregiver and parent at times. He asked the juvenile court to select a plan of legal guardianship and to order unsupervised visitation between him and the children. L.M. stated that Mr. M. was

not supportive and did not sufficiently encourage visitation between L.M. and the children.

In a written response, CFS recommended that L.M.'s request be denied, parental rights be terminated, and a permanent plan of adoption selected for the children. In response to L.M.'s petition, a social worker contacted both Mr. M. and Ms. S. Both expressed the belief that it should be up to the children whether to have continued contact with L.M. and both indicated that the children expressed their desire to not have contact with L.M. at this time. Mr. M. stated that if the children were to express a desire to communicate with L.M. in the future, he would assist in initiating that contact.

The social worker further reported that she spoke with H.R. and R.R., separately, by phone. H.R. expressed frustration with L.M., stated she did not want contact with L.M., and further stated she did not care whether her sibling relationship with L.M. remained intact. R.R. expressed that he preferred to be adopted by Mr. M. and Ms. S. and did not want anything to do with his maternal side of the family. The juvenile court ordered that L.M.'s petition be heard at the same time as that set for the contested section 366.26 hearing.

D. *Section 366.26 Hearing and Termination of Mother's Parental Rights*

On November 5, 2020, the juvenile court held a contested hearing regarding the selection of a permanent plan under section 366.26, as well as on the issue of the sibling bond exception raised in L.M.'s section 388 petition. The juvenile court accepted CFS's section 366.26 report, as well as the written response to L.M.'s petition, into evidence.

6

Mother testified that she formally adopted H.R., R.R., and R.E. in July 2017, but has known each of the children since birth, and the children have lived with her most of their lives with the exception of the last two and a half years. Mother stated she had a loving relationship with each of the children, in which she talked with them about their concerns, soothed them, and enjoyed recreational time with them. She stated that each of the children would verbally and physically express affection for her. On cross-examination, Mother admitted she had not seen the children for the past year, and all that she had described had not occurred in that time period.

L.M. testified that he is the sibling of H.R., R.R., and R.E. He lived with H.R. "off and on" when she was little, but he lived continuously with the children once they were placed into Mother's care. He testified that he and H.R. "did everything together" and were "attached at the hip" as children. He also recounted that he and H.R. experienced sexual abuse together and would speak intimately with each other about their experiences.

With respect to R.R., L.M. testified that they shared a room together after they were removed from Mother's home and expressed the belief that R.R. looked to him for guidance. L.M. helped R.R. with homework, and the two ate together and did chores together. With respect to R.E., L.M. described her "like my live baby doll that I loved to have," and recounted how he would help watch her and "be like, the second parent for her."

L.M. believed that all three children were still bonded to him. However, since the children were placed with Mr. M. and Ms. S., L.M. had only had a few visits with them.

7

Despite this, L.M. believed the children still needed him as a confidant and support person in their lives.

On cross-examination, L.M. testified that he believed the children were closely bonded with Mother, they loved Mother, they did not "know what's real and what's not real," and their caretaker following initial removal from Mother would manipulate the children into expressing a dislike for Mother.

L.M. admitted the last time he lived with his siblings was in November 2019, and he had only had two or three visits with the children in 2020. L.M. further admitted that he had no knowledge of whether the children wished to be adopted. He did not have any personal information that Mr. M. or Ms. S. was manipulating the children in the manner he claimed prior caretakers had.

Following argument, the juvenile court expressed its understanding that it was legally obligated to select adoption as the permanent plan unless it found that an exception applied. The juvenile court found no current bond between the children and Mother that would justify an exception based upon their relationship. With respect to L.M.'s assertion of a sibling bond, the juvenile court agreed that L.M. was part of the sibling set at the time of removal, he lived with the children for a large portion of the time they were removed, they shared common experiences, and he had been a big part of the children's lives during the time they were removed. However, the juvenile court indicated the circumstances had since changed, noting the children were now expressing that they did not currently want to have a relationship with L.M. and, as such, the need for permanency outweighed the need to maintain any sibling bond.

The juvenile court terminated mother's parental rights and set the matter for a further permanency planning review hearing.  L.M. appeals from this order.

## III.  DISCUSSION

On appeal, L.M. contends the juvenile court's order terminating mother's parental rights must be reversed because the juvenile court failed to properly apply the sibling bond exception under section 366.26, subdivision (c)(1)(B)(v).  Specifically, L.M. argues:  (1) the juvenile court's finding that the children would not suffer detriment from a substantial interference with their sibling relationship was not supported by substantial evidence, and (2) the juvenile court's determination that the benefits of adoption outweigh any detriment posed by interference with the sibling relationship was an abuse of discretion.  We find no error in the record before us, and we affirm the order.[6]

### A.  *General Legal Principles and Standard of Review*

Under section 388, "[a]ny person . . . may petition the court to assert a relationship as a sibling related by blood, adoption, or affinity through a common legal or biological parent to a child who is, or is the subject of a petition for adjudication as, a dependent of the juvenile court, and may request . . . consideration when determining or implementing

---

[6] The question of whether a sibling granted permission to appear at a section 366.26 hearing pursuant to section 388, subdivision (b), has standing to appeal from the order terminating parental rights appears unsettled.  (Compare *In re J.T.* (2011) 195 Cal.App.4th 707 [sibling does not have standing to appeal from order terminating parental rights] with *In re D.M.* (2012) 205 Cal.App.4th 283 [sibling has standing to appeal for purpose of seeking limited review of juvenile court's determination on application of sibling-bond exception].)  Nevertheless, neither party raised the issue on appeal, and resolution of the issue appears unnecessary to affirm the juvenile court's order in this case.  (See *In re Celine R.* (2003) 31 Cal.4th 45, 52, fn. 2 [declining to decide issue of sibling standing where unnecessary to affirm trial court's order].)

a case plan or permanent plan for the dependent child." (§ 388, subd. (b)(1).) Here, L.M. brought a section 388 petition in order to assert a sibling relationship and request consideration of the sibling bond exception at the time of the contested section 366.26 hearing.

"The express purpose of a section 366.26 hearing is 'to provide stable, permanent homes' for dependent children. [Citation.] If the court has decided to end parent-child reunification services, the legislative preference is for adoption. [Citations.] When the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless . . . one of six enumerated exceptions applies." (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 780-781.)

One such exception is the sibling bond exception, which provides that the court is not required to terminate parental rights where it "finds a compelling reason for determining that termination would be detrimental to the child . . . [because] [t]here would be substantial interference with a child's sibling relationship." (§ 366.26, subd. (c)(1)(B)(v).) " 'If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption.' " (*In re Elizabeth M.*, *supra*, 19 Cal.App.5th at p. 781.)

The burden is on the party opposing adoption to show that termination of parental rights would substantially interfere with the sibling relationship such that the detriment to the child outweighs the benefits the dependent child might otherwise gain in a permanent

home through adoption. (*In re Celine R.* (2003) 31 Cal.4th 45, 61; *In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.)

"In reviewing challenges to a trial court's decision as to the applicability of these exceptions, we will employ the substantial evidence or abuse of discretion standards of review depending on the nature of the challenge. [Citation.] We will apply the substantial evidence standard of review to evaluate the evidentiary showing with respect to factual issues, such as whether the child has a close and strong bond with a sibling . . . . However, a challenge to the trial court's determination of questions such as whether, given the existence of a sibling relationship, there is a compelling reason for determining that termination of parental rights would be detrimental to the child ' "is a quintessentially discretionary determination." ' [Citation] We review such decisions for abuse of discretion." (*In re J.S.* (2017) 10 Cal.App.5th 1071, 1080.)

B. *Substantial Evidence Supports Any Implied Finding That Termination of Parental Rights Would Not Substantially Interfere with the Sibling Relationship*

On appeal, L.M. does not challenge the juvenile court's determination that the children were adoptable, but contends the juvenile court erred in concluding that a permanent plan of adoption would not substantially interfere with the sibling relationship

between L.M. and the children. Specifically, L.M. contends this implied[7] finding is not supported by substantial evidence. We disagree.

"The purpose of the sibling exception is to preserve long-standing sibling relationships that serve as 'anchors for dependent children whose lives are in turmoil.' [Citation.] 'To show a substantial interference with a sibling relationship the . . . sibling granted standing . . . must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship.' [Citation.] The court should consider 'the nature and extent of the relationship, including whether the child and sibling were raised in the same house, shared significant common experiences or have existing close and strong bonds.' " (*In re Elizabeth M.*, *supra*, 19 Cal.App.5th at p. 781.)

In this case, while L.M. resided in the same home for a significant period of time and, as a result, shared some significant common experiences with the children, the evidence also suggested the children did not have an existing close or strong bond with

---

**7** We observe that there does not appear to be an express factual finding on this issue. Both parties to this appeal assume the juvenile court made such a finding, but they have not cited to the record to identify such a finding. The minutes of the hearing and the juvenile court's oral statements on the record do not appear to include any specific factual finding. Nevertheless, we recognize that "[t]he Legislature demands an express finding on the matter of detriment *only* when the trial court determines detriment exists and relies upon it to refuse to enter an otherwise proper termination order." (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1321; § 366.26, subd. (c)(1)(D).) "Where the statute does not mandate explicit findings, and where substantial evidence supports the juvenile court's order, findings may be implied." (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1166.)

12

L.M.  By the time of the section 366.26 hearing, H.R., R.R., and R.E. had been living separately from L.M. for more than a year.  During that year, visitation and communication between the children and L.M. occurred only a handful of times.  Further, Mr. M. and Ms. S. reported that the children expressed no desire to have contact with L.M., and the social worker reported that both H.R. and R.R. specifically expressed that they did not wish to continue a relationship with L.M.  Particularly given H.R. and R.R.'s expressed desire to be adopted, even at the expense of maintaining a relationship with L.M., the juvenile court could reasonably conclude that the children's current bond with L.M. was not particularly strong or that the nature of any relationship did not suggest L.M. served as an anchor in the lives of H.R., R.R., or R.E.

Thus, there was substantial evidence upon which the juvenile court could rely to find that the nature of the sibling relationship between the children and L.M. was not sufficiently significant to cause detriment to the children if parental rights were terminated.  Absent detriment, the sibling bond exception to termination of parental rights does not apply, and where the juvenile court's finding on this issue is supported by substantial evidence, L.M. has not shown grounds for reversal on appeal.

C.  *The Juvenile Court Did Not Abuse Its Discretion in Concluding the Need for Permanency Outweighed Any Potential Detriment*

L.M. also argues the juvenile court abused its discretion in concluding that any detriment to his sibling relationship with H.R., R.R., and R.E. was outweighed by the benefits these children would receive from adoption.  As we have already explained, substantial evidence supports the juvenile court's finding that the children would not

13

suffer detriment as a result of interference with any sibling relationship. Nevertheless, even assuming detriment did exist in this case, it was not an abuse of discretion for the juvenile court to conclude any such detriment was outweighed by the benefits the children would gain from adoption.

"[E]ven if adoption would interfere with a strong sibling relationship, the court must nevertheless weigh the benefit to the child of continuing the sibling relationship against the benefit the child would receive by gaining a permanent home through adoption." (*In re Celine R.*, *supra*, 31 Cal.4th at p. 61; see *In re J.S.*, *supra*, 10 Cal.App.5th at p. 1080.)

Here, by the time of the section 366.26 hearing, H.R., R.R., and R.E. had been deprived of a permanent home for years. The children had been removed from their biological mother and adopted by Mother in 2017, removed less than a year later from Mother in March 2018, and moved multiple times in the following year until finally being placed with paternal relatives willing to adopt in October 2019. It was reported that following placement with Mr. M. and Ms. S., the children's lives had stabilized. Indeed, both H.R.'s and R.R.'s emotional well-being had improved to the point where they were no longer considered in need of therapy, and they both expressed a desire to be adopted by Mr. M. and Ms. S. Based upon this record, it was not unreasonable for the juvenile court to conclude that the benefits these children would gain from adoption outweighed any potential detriment posed by interference with their sibling relationship with L.M.

On appeal, L.M. does not contest the reasonableness of such a conclusion, but he suggests that it was unreasonable for the juvenile court to reach this conclusion without hearing directly from the children, pointing out that "the children have presented untrue representations of their positions in the past," and that the children may have been under the mistaken belief that adoption was the only way to ensure they would not be returned to one of their prior placements. However, " ' "[t]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason [and] [w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Where the juvenile court's exercise of discretion is based upon evaluating the credibility of witnesses and evidence, this court does not reweigh the evidence or substitute its judgment for that of the juvenile court. (*Id.* at p. 319; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Thus, L.M.'s arguments attacking the credibility of the evidence before the juvenile court is not a basis for this court to reverse the juvenile court's order. It was for the juvenile court to weigh the credibility of the witnesses and reports regarding the children's expressed desires and to determine what weight such evidence should be given. If the juvenile court's decision is otherwise reasonable following its credibility determinations, no abuse of discretion has been shown.

## IV.  DISPOSITION

The order is affirmed.  The request for judicial notice filed June 25, 2021, is denied, as the matters identified in the request are not relevant to the dispositive points on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
Acting P. J.

We concur:


RAPHAEL
J.


MENETREZ
J.

16